Glen Dannis for Appellant Baumann. I'd like to just let the court know that Amicus, I've allowing him a few minutes to also speak, and I'd like to reserve about a minute and a half if that's all right. Well, what I'd like to point out, and what seems not to have been covered as much in Urbino just before us, is that what Chase seeks to do here is to depart from a rule prohibiting aggregation of claims in all but the narrowest of cases, in derogation of federalism considerations that have animated diversity for two centuries. In the recorded history of the Ninth Circuit, there have been two times that this court has ever aggregated the claims of different plaintiffs. One in Skokomish Indian Tribe, and again in Eagle. Both of those were situations of the classic unitary race to which the party's plaintiff had a single title prior to litigation. Skokomish involved a single piece of land or tract of land that had been given under one title, and Eagle involved a derivative action against the corporation for injuries to the corporation of which there's no analog under PAGA. PAGA, I'm sorry, the anti-aggregation rule here is what would be required in order to meet the $75,000 threshold. There's no dispute in this case that Mr. Baumann's claim himself, if you take the penalties aggregated at $13 million and divided by $699,000, which is the absolute outside estimate of the number of aggrieved employees as calculated by Chase, would put $18,000 per plaintiff at stake, and Mr. Baumann's stake would be that pro rata. Can I ask you a question about the amount in controversy? The district court never addressed the amount in controversy, the aggregate amount in controversy issue because it thought that, you know, the claims couldn't be aggregated. The district court didn't find any particular per-plaintiff claim. Well, my question is this. Let's assume that, do you dispute that if the claims are aggregated, that they are more than $75,000? No, we don't dispute that. And do you dispute that, and I think the $13 million number has been thrown around. I'm not sure the district court made any findings on it, but even if we only looked at 25% or 75%, both of those numbers would exceed the $75,000 amount. Yes, Your Honor, I believe so. Okay, I just wanted to, because there wasn't any real record on this. The parties have made assertions. I just wanted to make sure that there wasn't any dispute about that. Right. The court was somewhat conclusory about it. It did not go into any of the underlying calculations, and I think just took Chase's word for it. But you don't dispute those calculations? No, we don't dispute that if you aggregate it, that would be so. We do dispute that if you were to view the real party in interest as the LWA, as the LWDA, I mean, essentially the state of California, which is Chase's position, as Your Honor, I think pointed out in the last oral argument and noticed that that would not be in federal court for other reasons. It would not be in federal court because under Ninth Circuit precedent, the state, through an agency, cannot be made to, cannot be removed. And the citation for that would be 50 Associates versus Prudential Insurance Company. Right, but we've already held that the state isn't a real party in interest in these actions. Okay, so if the state's not a real party in interest, I think. Maybe for diversity purposes. Right. So I think under the proper analysis, we look to this court's jurisprudence on aggregation, which seems to have been lost on, certainly was lost on the district court. The district court did not cite a single appellate case on point. And essentially what the district court did was look to the Urbino court, and the Urbino court essentially cited Eagle and Gibson cursorily and then relied on Thomas, one district court, actually a magistrate district court, a magistrate's report and recommendation and district court action. The Thomas action, upon which all of this is predicated, neglected to mention a number of the key presidential decisions from this court, which would be the Ford decision, first and foremost, which said that, or which clarified the rights-based analysis and said that when we are looking at these claims and looking to see whether or not claims get aggregated, we look to see what legal relationship they bore prior to the filing of suit. It's not the actual action or rights that spring from the litigation that are at issue. It's pre-existing legal relationships. In the Ford case itself, they were dealing with a rebate program under a credit card that was aggregated for a class action suit seeking injunctive relief, compensatory damages and punitive damages, I believe. And the court said, even though you're seeking unitary relief and even though you're obviously bound together in this suit, your behavior, your conduct prior to the filing of it, your individual purchases and use of the rebate program is what's really at issue. And the right that is at issue is the right to be free of deceptive advertising or the right to be able to take part in the refund program, which is an individually held right, has nothing to do with aggregation for purposes of litigation. That's irrelevant to the aggregation analysis. Without sort of repeating the whole question I asked in the previous argument, this is sort of a strange animal. It's a California statutory animal that doesn't exist anyplace else. Why shouldn't we ask the California Supreme Court whether this is a unitary right or a divisible right? Well, I think that, you know, the jurisdictional question is one that's really for this court to decide. And it's not really a closed question because it's animated to a large extent by this court and Supreme Court precedent on federal jurisdiction. In other words, the California Supreme Court can't really speak to, you know, the fact that we are supposed to jealously limit federal diversity jurisdiction. And obviously, they have no say on that. The California Supreme Court is going to be, we're also lead counsel in the Iskanyan case. And one of the issues that the California Supreme Court is currently reviewing is the enforceability of PAGA waivers and is really, is probably going to be speaking a great deal about the nature of PAGA rights. One of the key California appellate decisions was one that made a, that drew a very close distinct, I'm sorry, drew a very close parallel between CLRA public injunction claims and the PAGA, based on the fact that they both involve sort of public rights, which is one of the other reasons why Chase's arguments fail. Because they go back time and time again to the unitary interest was the public's right. The public's right is just, you know, enforcing the public's right. Well, this court, three different times, has taken a CLRA public injunction claim and said, regardless of whether or not the suit is for the benefit of the actual litigants or for the public at large, we do not aggregate because the underlying pre-litigation rights were the rights either to be free of deceptive advertising, the right in Judge Posner's In re Branding Prescription Drugs case, the right to be free of collusive pricing. These are all the different rights that are involved. Rights that spring from the litigation, such as the right to go after penalties. Those are not pre-existing rights for purposes of this circuit's jurisprudence. And there's literally six, seven different cases repeating that over and over again, that you simply don't look to rights that are creatures solely of the litigation. Well, does it make some sense to wait for Iskanian to be decided? Well, I think if Your Honor is asking with regard to the arbitration question, if you were inclined to decide the arbitration question first, I definitely think that you should wait for Iskanian to be decided. What about American Express up at the Supreme Court? Well, you know, Amex 3 could go one of a number of ways. You know, I think that there's so many different permutations. In other words, the court could say, having listened to oral argument, they seem keenly interested in the evidentiary record. It could be that it's sent down for further evidentiary record. Right. We don't know which direction they might take in that case, and it may or may not bear. And same thing with Iskanian. Well, Iskanian is almost certainly going to bear on your other case. It may not bear directly on our case, although Chase has moved to compel arbitration, which was put into abeyance when the remand order was certified for appeal. So, you know, it's probably going to be very relevant here also. Just to make sure I understand the status of this record, the district judge, because the judge entered a remand order, never treated the arbitration issue, right? Correct, Your Honor. So those issues are really not in front of us on appeal. That's correct. Although it was filed. Can I ask you to address the CAFA issue, which was not implicated in the other case we heard this morning? Why isn't this action sufficiently similar to a class action? I know the California Supreme Court has said it's not a class action for purposes of California law, but we've got that language in CAFA that talks about something brought under Rule 23 or a State equivalent that's sufficiently similar. Why isn't this sufficiently similar to a class action? Well, this Court's decision, and I believe Your Honors are well acquainted with Chime. Which is a parents-patriarch case. Right. Which is a parents-patriarch case. I mean, especially under Chase's characterization of this as being simply a law enforcement action brought by the State, the parallels between a parents-patriarch action and PAGA could not be clearer. The reason I ask is that in the previous case, the person in your position was saying, no, no, these are really a bunch of individual claims. They're going to get judgments for them, and they're all, and that sounds to me a lot like a class action. Well, I mean, I think Your Honor is right in some respect. I think it's like a class action in some respects in that it's representative. Chime talks about the fact that representative action and event diagrams are the large circle within which class actions are, you know, are spaced. It's similar to a class action in that a judgment would probably say this is a judgment in favor of the plaintiff and other aggrieved employees and direct defendants to produce a class list of contact information. Then they would go about the business of distributing the money. I mean, it bears some similarities, but CAFA doesn't require similarity. The CAFA actual text says it has to be under an analogous state statute. That says the suit will be a class action. Chime put a great amount of emphasis on the fact that it's not simply resemblance to a class action, but it must actually, it appears to say that it has to have the words class action. And not only does PAGA not have that words, and not only does PAGA not have any of the indispensable indices of a class action such as adequacy or typicality, but, you know, it also does not use the words, and in fact, the California Supreme Court in areas quite clearly said that it does not have to be certified. I think that, you know, one of the distinguishing features of PAGA is the fact that it has a relaxed and sort of no typicality requirement. In other words, the PAGA representative can bring claims on behalf of people who have different sorts of violations. So long as those violations are included in the complaint. I think this was one of the areas in which Chase mischaracterized our arguments and said, we're saying that you can go after allegations that are not in the complaint. We don't say that. But under 2699 sub c, any, an aggrieved employee is just someone who has suffered some covered labor code violation, and those violations need not be the ones that are being brought by the particular representative in court. They need not have the exact same ones. What's the preclusive effect of a PAGA judgment one way or the other? It precludes those who would be covered by the judgment from getting penalties on the same violations. But as Your Honor, I think, pointed out in the last hearing, it would not preclude them from going after the same underlying claims for other sorts of remedies, which is one, another area where this markedly differs from a class action. In a post-certification class action that lost on the merits, everyone would be precluded from going after the same violations for any theory or any remedy. And I believe the areas court went to great lengths to point out that being one of the distinguishing differences. I would also point out that, and I just wanted to make the point, but I think that we've covered it, that if the LWDA had decided to act through the Labor Commissioner and brought the suit, that it would not be removable. So I just wanted to make that clear. If we didn't believe that the aggregation rule exception, the non-aggregation rule exception, barred aggregating penalties here, it would still not be removable because the alternative argument would be that it's simply the same right that the LWDA had, which would not be removable either. In any event, I have actually nothing more unless Your Honor has any other questions. PAGA come to be as the result of an initiative, or is it legislatively passed? I believe it was legislatively passed in 2003. And there have not been very many PAGA trials, which is one reason why the mechanics of PAGA are a little bit of a mystery and are sort of being worked out. I know that the Thurman case was one of the few appellate decisions that have actually looked at a, you know, a PAGA, you know, full trial. And I believe it affirmed the verdict but lowered the amount of penalties. Given all that uncertainty about how PAGA works, since nobody can tell us, is there, has anybody made an abstention argument in these cases? Not that I'm aware of, Your Honor. I think it's too early because unless there's jurisdiction, there's no abstention. I believe that's correct. There have not been very many federal decisions, just a handful on sort of the nature of PAGA. And usually, it often comes up in the arbitration context, but it has come up in others as well as there's a big dispute over whether or not Rule 23 applies, which we contend that it does not because PAGA has been held by the courts, I think, that have the better view of it as not being a pure procedure such as sort of, you know, how a pleading has to appear or any other sort of minutiae of litigation. It has substantive elements to it. And the amalgamated case, which defendants sort of rely on exclusively to say that it's, you know, merely procedural, not substantive, only held that in an associational standing case, it didn't have the right or it could not be transferred like a property right through assignment. And I think in that case, the California Supreme Court, not only was it a very narrow holding, but was really talking about the fact and I think troubled by the fact that assignment can be done with so few formalities. So how do you, do you think that the Lucent Technologies case applies to your analysis? That's the one where the department brought an FEHA claim on behalf of an employee who was removed to federal court and we said, well, that's all right. The state's not the real party in interest here. I'm not familiar with that case, but I would say. I mean, that would, if it applies in this context, it runs counter to your argument that you couldn't remove if the state brought it. And that was a, I'm sorry, that was a. It was a California Fair Employment and Housing Act action taken by the California Department of Labor and we said you can remove that case. And based on diversity? Yeah. Well, I mean, I think that, I'm not familiar with that case, but I would say that. But the holding in that was that for diversity purposes, the California, the state was not a real party in interest. Well, I take it in that case that there was no aggregation analysis. No, no, no. I mean, I think that that's really where the proper focus here has to be. I mean, this isn't really too complicated a case. This is really one district court. No, I understand that part of your argument. I was just responding to your assertion that you couldn't remove it if the state. I see what you're saying. I see what you're saying. Yeah, okay. You haven't read the case, so that's fine. Okay. I didn't follow through with that. I'm sorry about that. No. I tried to be on top of it. No, no. This is a slightly different area. And you wanted to reserve some time for your colleague. Yes. I'd like to give him the rest. Go ahead. If it pleases the Court, Your Honor, Alan Graves on behalf of amicus Stacey Thompson. Your Honors began the argument by asking the question, you've asked a couple of times, why should we not send this to the California Supreme Court to advise us about whether Labor Code Section 2699 creates a unitary interest or not? And the answer is you should not do that because Labor Code Section 2699 is a procedural statute, and our cases require us to look at the underlying right, not the procedure. 2699 is not the vehicle by which you would decide whether there was unitary interest. Labor Code Section 512 is the vehicle by which you would decide whether there was unitary interest. This Court actually addressed that very issue when it looked at Portero Hill. In Portero Hill, tenants of a public housing project asked for common improvements. They wanted their hallways fixed. They wanted their playgrounds fixed. They wanted their stairwells fixed. Clearly, there was only one remedy to be had. Everyone's hallways got fixed or they didn't. They were certified as a class, so they shared a common procedural remedy. This Court said, no, that doesn't get you to aggregation. It looked at the fact that each person's underlying right came from a lease and said, your tenants, because of the lease, the leases are individual. I don't care that you had a common procedural device. I don't care that you had common remedies. Your rights came from a lease. You can't aggregate. And that's the situation that you're facing here. The aggregation case has to be. What's slightly different in this case is the notion that 75% of the recovery goes to the state. Well, I think in some ways that's exactly the same because we have, in this case, 75% of the money. And actually, let me note, it doesn't work out to 75%. There are at least two penalties that still get paid entirely to the employees. Okay, but use it as a shorthand. Well, it can be a lot. For example, if it goes to section 558, it gives the employees a full year of wages. No, I mean, but it's not a lot in terms of the $75,000. Sure, sure, all right, fair enough. So why are those different? Well, in Potero Hill, 100% of the relief was going to go to a single group indivisible relief, right? The hallway was going to get fixed or it wasn't. The playground was going to get fixed or it wasn't. So this really is similar because in Potero Hill, all the relief was common. The individuals all shared common relief. Now, it's true here, the money's getting paid to the state. But your cases tell us that's not what's important. And actually, the parties agree on it. If you look at page 18 of the police brief and response, they say, the character of the interest asserted depends on the source of the claims, not the remedy and not the procedure. And I think that's a key issue for the court to address in its opinion, right? If you look at the source of the claims, you're looking at individual rights. Well, but if the state had brought these claims, and again, put aside whether or not the state could be a diverse party for purposes of this. We would say it's the amount of controversy exceeded $75,000, wouldn't we? Respectfully, no, Your Honor. The LWDA and the DLSC are authorized by Labor Code section 79 through 107. None of those sections actually allow that agency to litigate on behalf of the state as an entity. In fact, if you look at Labor Code section 96, the state takes assignment of individual employee claims. And in fact, when the state litigates, it does not litigate. The LWDA and the DLSC do not litigate with the state as a named party. Your Honor, as I've mentioned, the state is not a named party in this action or ever in these actions. So no, you- Ever in PACA actions, but can't LDW, can't the state agency bring its own enforcement action? There's no authorization for them to do so without doing so on behalf of an employee. They must take assignment of employee action, and they proceed- Even as to penalties? Even as, well, they've never tried, to my knowledge, to bring an action just for penalties. But if you look at Labor Code section 79 through 107, there's no authorization that would let them do so, and they've never tried. I understand how under the Labor Code they could pursue the individual compensatory claims on behalf of employees. But their statutory mandate does not authorize them to do so. And importantly, they don't do so. Every case that has been briefed by both parties, the DLS, that mentions the DLSC, the DLSC is representing an employee. That is not their function. They are not an attorney general like the state attorney general is the attorney general, right? When the state comes to you, the state's a party, and the attorney general stands before you and represents the state. When the DLSC, in whose shoes we're now nominally standing, comes to you, they take assignment of a claim. And their mandate in Labor Code section 79 through 107 is to take assignments of claims. So respectfully, no. Even if they, imagine the theoretical world where you could remove a claim by the DLSC and they came before you and this issue was here. No, they have to represent employees. They don't have the statutory mandate to represent the state. That's what the state attorney general is for. This is a subsidiary agency. They don't do that. All right. Your time has expired.  We'll give you a couple minutes. Thank you, Your Honor. May it please the Court, Keri Connell representing Chase Investment Services Corporation. I want to address a number of issues that have come up in the argument. We've now been talking about these issues relating to jurisdiction for some time. And I think there are some important clarifications that may help the Court reach a decision in this matter. And one of them is the Ninth Circuit's decision in EGLE. We've been colloquially referring to that as a shareholder derivative action. It's not. That was exactly the question that was before this Court. That's what made the EGLE decision interesting is that, in fact, it was not a shareholder derivative action. Because Pacific AT&T had become a merged entity, there were all sorts of underlying procedural issues that precluded the corporation from pursuing the relief. And also precluded what we normally understand as a shareholder derivative action. So the question that was before this Court in EGLE was, look, we have a collection of individuals who were allegedly injured by the conduct that also injured the corporation. Are we going to allow those individuals to aggregate those claims for purposes of this action? And the Ninth Circuit very clearly said, yes. Yes, we will. And in that sense, the situation in EGLE is directly analogous to the situation here. You have an underlying interest or injury. In EGLE, it was the injury to the corporation. In this case, it's the injury to the public. In EGLE, you have a normal way in which those claims are pursued. A shareholder derivative action or an action on behalf of the corporation. In this case, you have a normal way in which those injuries are pursued. It would be a case brought by the LWDA. And in both EGLE and in this case, we have an alternative vehicle to pursue those penalties or remedies. In EGLE, it was that conglomeration of individual shareholders. And in this case, it is a PAGA action brought by Mr. Bowman. And so in terms of whether or not the cases that are most analogous from the United Circuit's perspective that have already been issued, EGLE is the one that's most directly on point. Because it looked at a collection of individuals who were coming together to enforce a single collective right. Several times today, the court has asked the question, should we certify to the California Supreme Court whether or not there is an actual injury? And I would say two things with respect to that. One is the California Supreme Court in Arias said directly that in a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies. Namely, recovery of civil penalties that otherwise would have been assessed and collected by the LWDA. You know, I get nervous when both sides say, you don't need to send it to the California Supreme Court because they've already clearly addressed the issue and I win. I think the short answer is nobody wants to certify it unless we think we might go against it. On the question of sending the California Supreme Court, I think we're in agreement. But that's also, you know, the issue of who the injury is to is an important one. Because in this particular case, and I want to turn to a discussion which hasn't gotten much attention. And that is, in this case, Mr. Bowman's reliance on the Ninth Circuit's decision in Cantor and Snow. So here, just this court, don't look at the court's decision in Eagle that's directly analogous to this situation. Instead, you should look at the decisions that the Ninth Circuit issued in Cantor and Snow. And from our perspective, Cantor and Snow make crystal clear why there has to be jurisdiction in this case. Because what Cantor and Snow both say is that we, the Ninth Circuit, have in fact allowed for the aggregation of injunctive-related damages in several cases. But we won't do so in the context of a class action. And that is what is expressly in both Cantor and Snow. So it says, look, we have aggregated these types of claims before. However, doing so specifically in the context of a class action is contrary to controlling Supreme Court precedent in Snyder and a few other cases. And so we won't elect to do that in the context of a class action for the following reasons. Now, that lays out that there are very clearly, there's very clearly district court jurisdiction over this case in one of two ways. Either this case is just like Eagle, and frankly like the other Ninth Circuit cases that predated Cantor and Snow, where there was aggregation in this kind of joint relief situation, or this is a class action for CAFA purposes. But appellant can't have it both ways. So either this case is a case where you have got a class action for CAFA purposes, because this is, as they argue, an aggregation of individual claims. Or this case is, in fact, a case, which is what Mr. Bowman says in his brief, and what is made clear in his complaint, that he is pursuing the action on behalf of the state. And the only thing that the appellant has really said in response to that at all is to bring up this severability argument. And I think that goes to one of the procedural questions about the operation of PAGA that it's really important to clarify. In fact, Mr. Bowman's interests are not severable from the state's. He can't proceed without them. There's an exhaustion requirement, at a minimum, that requires him to put the LWDA on notice of the claims, and then ultimately for the LWDA to make a decision about whether or not they're going to investigate and pursue those claims or not. There is a statutorily required partnership between those two entities, at least. And so Mr. Bowman, in seeking to pursue these claims, his interest is, in fact, not severable from the LWDA's. Even though the LWDA is not necessarily a named party in this action. And so it's important to remember that, in fact, you don't have an opportunity to sever the interests of Mr. Bowman and the interests of the LWDA in this particular action. What happens, I've asked this question before, what's the judgment? Nobody knows, none of these cases have ever been tried. But what does the judgment look like if we try this one?  And I believe the judgment is in the name of the plaintiff. And he has statutory duties, but the judgment goes to... Exactly, and he has statutory duties to then pay those penalties out in the way that's prescribed by the statute. And one of the interesting things about the statutory scheme here, and the way the penalties are set up, is that we've been talking about the difference between the 75% and the 25%. Well, that's a statutorily created animal. 100% of those penalties belong to the state. That is the pre-litigation interest. The state has that interest in 100% of those penalties, right? That's created by statute, that has to do with the public's interest in enforcing the labor code. What plaintiffs in this case could ultimately recover in a judgment is a cut of the state's penalties. It's not even a statutory scheme that says, state, you get 100% of your penalties, and then we pay some sort of bonus on top of that amount. It goes to the fact that the interests of the state, and Mr. Bowman in this case, are inextricably intertwined. Is the underlying interest for Snyder purposes defined by state law? The underlying... In other words, there's no federal entitlement to anything that we're dealing with here. So if we're dealing with a single and unified claim, or a severable claim, isn't that a state law issue? I mean, you've both been quoting the labor code and PAGA, but I haven't heard anybody cite any federal law about whether it's common and divided. So is this a state law issue? It is a federal issue in terms of what is actually defined as the interest, but certainly we can look to the California Supreme Court's description of what a PAGA claim is to help illuminate that analysis. And more importantly in this case, the question of what is the interest is, what is Mr. Bowman seeking to do in this particular case? Because the question that's currently before the court here, and was before the district court, is whether there's jurisdiction over this particular case. Not whether there's jurisdiction over every potential PAGA action, whether there's jurisdiction over this one. And in this particular case, what Mr. Bowman has said is that he is proceeding on behalf of the agency to represent a certain group of employees. And so with that respect, the allegations that are before this court, the particular jurisdictional amount that we're trying to determine here is driven by the allegations that he's made in his complaint. So for those purposes, you essentially, the inquiry, although it's ultimately a question of federal law, you certainly can look to what the Supreme Court has told us about how PAGA operates, but also really you should be looking at what Mr. Bowman himself says in his complaint. Because that's ultimately the driver about what he's put in controversy just for this question of jurisdiction. And that's partially why some of the collateral questions that have been raised by the litigants in both of the last two actions about how these claims get proven and how they get litigated are not relevant to this question that's currently before the court in this action, because it really only deals with what's the amount that this particular individual has put into controversy. And the one last point that I would make with respect to the class action piece, and that is both arguments on this case on the appellant side talks about the fact that PAGA is a procedural vehicle, and that's true. There is a procedural vehicle element to ARIAS. And what we know for class action jurisdictional purposes, if that's true, then under controlling authority from Shady Grove, the result has to be that this functions as a class action. Well, Shady Grove is, I'm more interested in how you deal with the Parents Patriot case. But Shady Grove is a case that says, look, a state law can't prohibit a federal court from treating something as a class action. That violates the eerie principles. But there's no prohibition about how the case gets treated once it's here. The CAFA statute seems to say it has to be brought under a state statute that authorizes a class action. So why don't you then run up to the problem that Judge Thomas's opinion in the Parents Patriot case said, which is that, for better or worse, the California Supreme Court has told us in ARIAS, this isn't a state statute that authorizes a class action. Well, for two reasons. So there are really, and let's start with the direct comparison to the Parents Patriot action and then sort of talk about the underlying issues. The reason that this case is not necessarily similar to the Enelux case is because that case involves an aggregation of individual damages claims. Right? So you're looking at an individual standing in the state of the shoes to pursue actual injury claims, damages amounts on behalf of those individuals. And so the question is whether or not that is a class action for these purposes. And the reason that this case is ultimately different is because there is a statutory mandate that permits an individual to stand in the shoes of the LWGA and ultimately pursue these penalty amounts. The nature of that claim for penalties, which is the state's claim, is very different than the nature of the potential claim in the Parents Patriot Act. So when you're looking at the question of, you know, what's different about those claims that might affect the jurisdictional amount, I think that that is the important distinction for purposes of considering whether or not this is a class action. And it goes to the underpinning, which is discussed in Enelux. Well, but before you leave that, as I read, and I can't pronounce the name, I want to say Shemai or Shemayu. That's why I was calling it Enelux. I know. And Judge Thomas probably knows the real name. But as I read that case, it turns on the, not on the nature of the claims being pursued, but on the nature of the state statute that authorizes the action. And it goes back to the language of CAFA, which talks about a state statute that authorizes a class action, if you will. That's not an exact quote, but you know the language. No, absolutely. Absolutely. So why doesn't that, why doesn't that holding give you difficulty in this case? Because this action is subject to Rule 23. And because it is an action that is subject to Rule 23. But it says brought under a statute in CAFA. In other words, if it were brought in federal court, a federal judge might say, yeah, you got to do it under Rule 23. But the CAFA statute talks about an action being brought under a state statute that authorizes a class action. Well, it talks about a two-fold way that you can be a class action under CAFA, one of which is brought under a state statute that allows for. And just to be clear, I mean, PAGA does permit you to bring your action as a class action. So that is a possibility. But it's two-fold, right? It's not just that it's potentially brought under a state statute that permits a class action. But, or that it actually is a class action. And a number. Brought under Rule 23. Right. And a number of federal courts that have looked at these PAGA actions have said that you are required to bring those actions once you're in federal court under Rule 23. Because there is no other procedural device for you to proceed. Does the brought under language refer back to the original filing? Or does it refer back to what happens thereafter? That's why I'm having some difficulty. And there's not much interpretation of it. There is not much interpretation under it. But clearly the background of the CAFA amendment that is in question says very clearly that the entire point of the CAFA amendments were to preclude gamesmanship in terms of the ability to plead around what should properly be a CAFA action for CAFA purposes. And that's why there's a two-fold attempt to establish what a class action is. Because the Congress elected that it didn't want to just say it has to be a class action. And to cite Napoleon's argument, use the words class action. Right. Congress has been very clear that is not what it intended. It intended there to be multiple avenues for access to what constitutes a class action for CAFA purposes. And the reason that Congress had that intention was to avoid exactly the kind of gamesmanship that's present in this particular case. Where you have a $16 million action that plaintiffs are somehow claiming falls into some jurisdictional no-man's land where it's supposedly a collection and aggregation of individual claims, but that's not actually a class action. And at the same time also isn't an action where all of the penalties are attributable to the individual plaintiff. And that's exactly the kind of result that Congress was attempting to avoid in giving multiple avenues to permit access to the definition of a class action for CAFA purposes. Is there any evidence, and I couldn't find any legislative history that anybody in Congress knew anything about PAGA or these bizarre California claims? I mean, I think it was still, you know, they were worried about real class actions, weren't they? I mean, I take your argument as that their concerns leak over to this kind of case, but. Well, the statutory language, Your Honor, directly says representative action. And it's, in the definition of what one of those avenues is, in other words, something that can function like a class action. Representative of the state? No, it says representative of one or more individuals that can be brought as a class action. But they use the word representative, in other words, they were contemplating actions that were not technically called class actions in the way that we normally perceive them. I take your argument, but representative of a state agency, they meant that? They said representative of one or more entities. So, they were not clear at all that they meant a state agency. But, in fact, it would seem to be more compelling when you have a conglomeration of a state agency and individuals that that would be a class action than a grouping of one or more individual plans. Unless Your Honors have any further questions? Okay. Thank you. Thank you. I'd like to just run over a couple of quick points. First, that diversity jurisdiction is not intended, as Chase would have it, to basically reduce the state courts to small claims courts and to protect out-of-state defendants. This court in Cantor at 265 F3rd at 861 said, quote, the goals of the amount and controversy requirement are to preserve the jurisdiction exercised by the state courts and to limit the size of the diversity caseload in the federal courts. Essentially, if Chase's arguments were adopted, every PAGA action that had more than 17 aggrieved employees with only one violation covered each during the statute of limitations with an out-of-state defendant or a defendant that's incorporated out-of-state, which almost all of them are, or at least most of them are, would be put into the federal courts. CAFA never meant to deal with that. CAFA is intended to deal with sprawling, multi-state, if not nationwide class actions that the frame. Well, but that's not right. CAFA can deal with a single-state class action as long as there's diversity, and it doesn't have to be all that sprawling. It just has to meet the 100-member requirement and the $5 million requirement. Well, that's true, Your Honor, but since Chase is bringing up the legislative history, I do know that a lot of the legislative history for CAFA, John Bisner went on at great length in his papers and representatives that he had the ear of went on at great length about the abuses that were perceived of nationwide class actions that had been put in remote state courts, like in Obeyan County, Tennessee. These were the issues that really animated CAFA. CAFA never intended to deal with a law enforcement action by the state. I think it would be, in fact, it would be a great affront to state sovereignty to take California's law enforcement actions over strictly California laws for only California employees and basically remove all but the smallest and least significant of them to federal court. I'd also like to point out that the Eagle case absolutely crumbles the analogy when you look at the fact that Eagle had to do with the fact that the injury was visited upon the corporation directly. There is no analog here. Chase strains to say that the injury was done to the public, but the public is not a race and is not something to which the plaintiffs here had a preexisting right. They had individual rights to be free of labor code violations. That's the preexisting right under Snyder that's at issue. Cantor and Snow, apart from not being the only cases on point, Gibson and Ford, we would contend, are the absolutely controlling cases here. Cantor and Snow did deal with public injunction suits and rejected aggregation. Chase would have the court believe that it was only to deal because those were class actions, but usually they like to aggregate. In fact, the only case that was cited in Cantor was Ritter Brothers, and Ritter Brothers did not appear to be a multi-party suit where they were taking the and valuing the injunction at the cost of the defendant to comply. And in fact, the court in Cantor said that the reason why they were going to reject the Ritter Brothers approach was because to do otherwise would be to undermine Snyder's rule regarding non-aggregation. And that's precisely why this court, other than Eagle, has not aggregated in a single case following Snyder. Your time has expired. Are there any further questions? Okay. Thank you. Thank you, Your Honor. Thank you both for your arguments. The case just ruled will be submitted for decision.
judges: Hawkins, Thomas, Hurwitz